# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CRAWFORD'S AUTO CENTER, INC., on behalf of itself and all others similarly situated;

   Plaintiffs;

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.*;

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:14-cv-03146

Honorable Robert M. Dow, Jr.

## MEMORANDUM OF LAW SUPPORTING GEICO'S[1] MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(1), 12(B)(6), 9(B), AND 8(A)

---

[1] Defendants Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, and GEICO County Mutual Insurance Company are collectively referred to as "GEICO."

# TABLE OF CONTENTS

**Page**

I. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF HAS FAILED TO ALLEGE GEICO ACTED IN A MANNER THAT HARMS PLAINTIFF .................................................................................. 1

II. PLAINTIFF'S "SHOT-GUN" ALLEGATIONS IMPERMISSIBLY ALLEGE MULTIPLE CLAIMS AGAINST A GROUP OF SEPARATE ENTITIES WITHOUT SPECIFYING WHAT WRONGFUL ACTS ANY PARTICULAR DEFENDANT, LET ALONE GEICO, ACTUALLY UNDERTOOK ....................... 3

III. PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO MEET THE REQUIREMENTS OF *TWOMBLY* TO STATE A PROPER CLAIM .......................... 4

    A. Plaintiff's RICO Claim (Count III) Fails to State a Claim for at Least Six Reasons ........................................................................................................ 4

        1. Plaintiff Does Not Properly Identify a RICO Enterprise .......................... 4

            a. The Alleged "Enterprise" Does Not Include Allegations of an Ascertainable Organizational Structure ..................................... 5

            b. The Alleged Pattern of Racketeering Is Nothing More than a Statement of Predicate Acts that Does Not Support a RICO Claim ............................................................................... 6

            c. There Is No Allegation of a Common Purpose ............................. 7

        2. Plaintiff Has Not Alleged GEICO and CCC Were Involved in an Enterprise ........................................................................................ 9

        3. Plaintiff Fails to Allege GEICO Was Involved in a Pattern of Racketeering Activity .......................................................................... 11

        4. Plaintiff Fails to Allege Proximate Causation, Rendering Its RICO Claims Deficient .............................................................................. 11

        5. Plaintiff Has Not Alleged GEICO Participated in Any Racketeering Activity in Its Complaint .................................................. 13

            a. Plaintiff Did Not Allege a Wire Fraud Claim with Sufficient Particularity Under Federal Law. .............................. 13

            b. Plaintiff Has Not Alleged Criminal Intent ................................. 14

            c. The Alleged Representation Was, Based on Its Conduct, Not Material to Plaintiff .......................................................... 15

        6. Plaintiff's RICO Conspiracy Claim Fails ............................................ 16

    B. Common Law Fraud (Count VIII) Fails .............................................. 16

    C. Plaintiff's Cannot State an Unjust Enrichment Claim Here ................ 17

IV. CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Am. Auto. Accessories, Inc. v. Fishman,*
   175 F.3d 534 (7th Cir. 1999) .................................................................. 13

*Anza v. Ideal Steel Supply Corp.,*
   547 U.S. 451 (2006) ............................................................................ 4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................... 15

*Ashland Oil Co., Inc. v. Arnett,*
   875 F.2d 1271 (7th Cir. 1989) ............................................................... 11

*Ass'n Ben. Servs. v. Caremark Rx, Inc.,*
   493 F.3d 841 (7th Cir. 2007) ................................................................ 18

*Baker v. IBP, Inc.,*
   357 F.3d 685 (7th Cir. 2004) .................................................................. 7

*Barsky v. Metro Kitchen & Bath, Inc.,*
   587 F. Supp. 2d 976 (N.D. Ill. 2008) ....................................................... 13

*Beck v. Prupis,*
   529 U.S. 494 (2000) ........................................................................... 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............ 3, 4, 10, 11, 12, 13, 14, 15, 16

*Blue Cross & Blue Shield of Ala. v. Caremark, Inc.,*
   1999 WL 966434 (N.D. Ill. Sept. 30, 1999) ................................................. 6

*Boyle v. United States,*
   556 U.S. 938 (2009) .......................................................................... 5, 6

*Bridge v. Phoenix Bond & Indem. Co.,*
   553 U.S. 639 (2008) ........................................................................... 12

*Brouwer v. Raffensperger, Hughes & Co.,*
   199 F.3d 961 (7th Cir. 2000) ................................................................ 16

*Browning v. Flexsteel Indus.,*
   955 F. Supp. 2d 900 (N.D. Ind. June 25, 2013) ............................................ 9

*Cedric Kushner Promotions, Ltd. v. King,*
   533 U.S. 158 (2001) .......................................................................... 5, 6

*Cement-Lock v. Gas Tech. Inst.,*
   05C0018, 2007 WL 4246888 (N.D. Ill. Nov. 29, 2007) .................................. 5, 6, 8

*Chriswell v. Vill. of Oak Lawn,*
   11 C 00547, 2013 WL 5903417 (N.D. Ill. Nov. 4, 2013) ................................... 3

*Cohen v. Am. Sec. Ins. Co.,*
   735 F.3d 601 (7th Cir. 2013) ................................................................ 16

*Corley v. Rosewood Care Ctr., Inc.,*
   388 F.3d 990 (7th Cir. 2004) ...................................................... 4, 13, 14, 15

ii

## TABLE OF AUTHORITIES
### (continued)

<b>Page</b>

*Crichton v. Golden Rule Ins. Co.*,
06-264, 2006 WL 2349961(S.D. Ill. Aug. 11, 2006), ............................................... 9

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009)........................................................................... 10, 16

*CustomGuide v. CareerBuilder, LLC*,
813 F. Supp. 2d 990 (N.D. Ill. 2011) ................................................................. 3

*D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*,
10 C, 8159, 2013 WL 1286696 (N.D. Ill. Mar. 28, 2013) ......................... 7, 8, 9, 16

*Drobny v. JP Morgan Chase Bank, NA*,
929 F. Supp. 2d 839 (N.D. Ill. 2013) ............................................................... 13

*G & S Holdings LLC v. Cont'l Cas. Co.*,
697 F.3d 534 (7th Cir. 2012)............................................................................. 1

*Goren v. New Vision Int'l, Inc.*,
156 F .3d 721 (7th Cir. 1998)...................................................................... 12, 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
13-317, -- S.Ct. -- (June 23, 2014) at § III.B...................................................... 12

*Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*,
747 F.2d 384 (7th Cir. 1984)............................................................................. 2

*Hemi Grp., LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010) ............................................................................................ 12

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) .................................... 2, 3

*Immediate Merch. Servs., Inc. v. Bankcard Am., Inc.*,
1994 WL 643272 (N.D. Ill. 1994)...................................................................... 7

*In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*,
850 F. Supp. at 1145...................................................................................... 14

*In re Potash Antitrust Litig.*,
667 F. Supp. 2d 907 (N.D. Ill. 2009) .................................................................. 2

*Jay E. Hayden Found. v. First Neighbor Bank, NA.*,
610 F.3d 382 (7th Cir. 2010)............................................................................. 7

*Jennings v. Emry*,
910 F.2d 1434 (7th Cir. 1990)....................................................................... 4, 5, 6

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (7th Cir. 1994)........................................................................... 14

*Limestone Dev. Corp. v. Vill. of Lemont, Ill.*,
520 F.3d 797 (7th Cir. 2008)......................................................................... 4, 5

*Mayer v. Spanel Int'l Ltd.*,
51 F.3d 670 (7th Cir. 1995)........................................................................... 17

19492024

# TABLE OF AUTHORITIES
## (continued)

Page

*McDonald v. Schencker,*
 18 F.3d 491 (7th Cir. 1994) ............................................................................... 4

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago,*
 877 F.2d 1333 (7th Cir. 1989) ....................................................................... 1, 3

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago,*
 693 F. Supp. 666 (N.D. Ill. 1988) ........................................................ 13, 15, 16

*Midwest Grinding Co. v. Spitz,*
 976 F.2d 1016 (7th Cir. 1992) ......................................................................... 11

*Minn-Chem, Inc. v. Agrium Inc.,*
 657 F.3d 650 (7th Cir. 2011) ............................................................................. 3

*Morgan v. Bank of Waukegan,*
 804 F.2d 970 (7th Cir. 1986) ........................................................................... 11

*Okaya (U.S.A.), Inc. v. Denne Indus., Inc.,*
 00C1203, 2000 WL 1727785 (N.D. Ill. Nov. 21, 2000) ...................................... 8

*Paulos v. Caesars World, Inc.,*
 379 F.3d 654 .................................................................................................... 12

*Quality Auto Body, Inc. v. Allstate Ins. Co.,*
 660 F.2d 1195 (7th Cir. 1981) ..................................................................... 2, 15

*Reves v. Ernst & Young,*
 507 U.S. 170 (1993) ..................................................................................... 9, 10

*Richmond v. Nationwide Cassel L.P.,*
 52 F.3d 640 (7th Cir. 1995) ............................................................................... 9

*Ryan v. Brown,*
 227 F.3d 1042 (7th Cir. 2000) ........................................................................... 3

*Schiffels v. Kemper Fin. Servs., Inc.,*
 978 F.2d 344(7th Cir. 1992), *abrogated* .......................................................... 16

*Slaney v. The Int'l Amateur Athletic Fed'n,*
 244 F.3d 580 (7th Cir. 2001) ....................................................................... 9, 13

*Stachon v. United Consumers Club, Inc.,*
 1999 WL 971284(N.D. Ill. Oct. 21, 1999), ................................................... 6, 8

*Stachon v. United Consumers Club, Inc.,*
 229 F.3d 673 (7th Cir. 2000) ............................................................................. 7

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v.
 Walgreen Co.,*
 719 F.3d 849 (7th Cir. 2013) ..................................................................... 5, 6, 9

*Walther v. Patel,*
 10-706, 2011 WL 382752 (E.D. Pa. Feb. 4, 2011) ............................................. 9

*Warth v. Seldin,*
 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ...................................... 1

# TABLE OF AUTHORITIES
## (continued)

Page

*Williams v. Ford Motor Co.*,
    11 F. Supp. 2d 983 (N.D. Ill. 1998) ..................................................................... 5, 9

## State Cases

*Emmerson v. Hutchinson*,
    63 Ill. App. 203 (App. 1896) ............................................................................... 17
*Gibbs v. Ernst*,
    647 A.2d 882 (Pa. 1994) .................................................................................. 16, 17
*La Throp v. Bell Fed. Sav. & Loan Ass'n*,
    370 N.E.2d 188 (Ill. 1977) .................................................................................. 17
*Magna Bank of Madison Cnty. v. Jameson*,
    604 N.E.2d 541 (1992) ........................................................................................ 17
*N. Trust Co. v. VIII S. Mich. Assocs.*,
    657 N.E.2d 1095 (Ill. App. 1995) ....................................................................... 17
*Rolando v. Pence*,
    331 Ill. App. 3d 40, 769 N.E.2d 1108 (2002) ...................................................... 2
*Sampen v. Dabrowski*,
    222 Ill. App. 3d 918 (1991) ................................................................................. 17
*Stutzle v. Rhone-Poulenc S.A.*,
    002768OCT.TERM2002 Control 062165, 2003 WL 22250424 (Pa. Com. Pl. Sept. 26, 2003) .... 3
*Vill. of Oak Lawn v. Faber*,
    378 Ill. App. 3d 458 (2007) ................................................................................. 17
*Wiernik v. PHH U.S. Mortg. Corp.*,
    736 A.2d 616 (Pa. Super. 1999) .......................................................................... 17

## Federal Statutes

18 U.S.C. § 1961 *et seq.* (2013) ............................................................................... 1
18 U.S.C. § 1962(c) ............................................................................................ 4, 16
18 U.S.C. § 1962(d) ................................................................................................ 16
18 U.S.C. 1343 ........................................................................................................ 13

## Federal Rules

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ......................................................................... 1
Fed. R. Civ. P. 8(a) ............................................................................................ 4, 12

A plaintiff must state a claim for injuries suffered *by the plaintiff*, or duties owed directly *to the plaintiff*, and must allege facts that expressly demonstrate how *each alleged defendant* has acted in a manner that would support a claim against *that defendant*. Additionally, to bring a RICO[2] or common law claim, a plaintiff must state the legal basis of those claims with particularity as to *each defendant*, and must avoid generalized allegations against a group of "defendants." Here, Plaintiff has:

1.  alleged injuries arising from rights of or duties owed to GEICO's customers, not Plaintiff *or any other potential class member,* meaning this Court lacks subject matter jurisdiction over this case;

2.  filed a 158-page Complaint that consists of page-after-page of "shotgun pleading" allegations that renders the Complaint inadequate as a matter of law, and an inappropriate vehicle to advance their claims, let alone to attempt to advance seven distinct class actions into one, because neither GEICO nor this Court could determine what allegations are made against GEICO (rather than the generic "Defendants") going forward; and,

3.  Plaintiff's RICO and common law claims fail because, stripped of the hyperbole and jargon, all that they allege is that GEICO has an ordinary business relationship with its estimating software company – not a RICO enterprise, racketing activity, nor an unlawful conspiracy.

Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF HAS FAILED TO ALLEGE GEICO ACTED IN A MANNER THAT HARMS PLAINTIFF

As alleged, Plaintiff's claims arise from the rights of and duties owed to others. "Among the prudential limitations on the exercise of federal jurisdiction [is that] the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties." *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540-41 (7th Cir. 2012) (citing *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). This "requirement is similar to the requirement of [Rule] 17 that every action must be prosecuted in the name of the real party in interest." 697 F.3d at 541. "Good reasons account for the enduring distinction between direct and derivative injury." *Mid-State Fertilizer Co. v. Exch. Nat.*

---

[2] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (2013).

*Bank of Chicago*, 877 F.2d 1333, 1335 (7th Cir. 1989). As the U.S. Supreme Court has made clear:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. … Second, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. … And finally, the need to grapple with these problems is simply unjustified …, since directly injured victims can generally be counted on to vindicate the law as private attorneys general without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269-270, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992).

Plaintiff's alleged injuries here are solely "second-order" and rest entirely on the rights of and duties to third parties—GEICO's customers. Plaintiff's allegation is that Defendants, including GEICO, are not paying Plaintiff what Plaintiff now believes the "prevailing rate" should be for labor on vehicles. Assuming *arguendo* Plaintiff is correct that GEICO is not paying the appropriate "prevailing rate" for auto body labor work performed by Plaintiff, that issue would be irrelevant, because what GEICO believes the "prevailing rate" is only dictates how much GEICO pays on claims made under its insurance policies—as GEICO's obligation to pay anyone arises under its contractual obligations to its customers. *See Quality Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1198 (7th Cir. 1981). If the amount GEICO pays is, in some way, too low, then the result would be that GEICO's customer allegedly would not be receiving the benefit of the bargain (*i.e.*, auto insurance coverage in exchange for premiums), and would have to pay more to Plaintiff for body work for a quality repair, and thus would have a claim against GEICO. *See Quality Auto*, 660 F.2d 1195. Plaintiff does not have a claim to force GEICO to pay a "prevailing rate," since GEICO has not agreed to pay anything to Plaintiff.

"RICO was designed to protect direct, and not just *second-order*, victims of organized crime infiltration." *Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 395 (7th Cir. 1984) (emphasis added). The same is true for Plaintiff's fraud and unjust enrichment claims. *See Rolando v. Pence*, 331 Ill. App. 3d 40, 769 N.E.2d 1108, 1113 (2002) (fraud); *In re*

2

*Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948 (N.D. Ill. 2009) (unjust enrichment);[3] *Stutzle v. Rhone-Poulenc S.A.*, 002768OCT.TERM2002 Control 062165, 2003 WL 22250424, *1 (Pa. Com. Pl. Sept. 26, 2003) (same).

"[T]he directly injured party should receive a complete recovery…; an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief." *Ryan v. Brown*, 227 F.3d 1042, 1045 (7th Cir. 2000). Plaintiff does not, because it occasionally deals with Defendants directly, have standing to assert the rights of GEICO policyholders' rights, as "direct dealing is not the same as direct injury." *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1335-36 (7th Cir. 1989). If policyholders deem the prevailing rate wrongful, they can "be counted on to vindicate the law." *Holmes,* 503 U.S. at 269.

## II. PLAINTIFF'S "SHOT-GUN" ALLEGATIONS IMPERMISSIBLY ALLEGE MULTIPLE CLAIMS AGAINST A GROUP OF SEPARATE ENTITIES WITHOUT SPECIFYING WHAT WRONGFUL ACTS ANY PARTICULAR DEFENDANT, LET ALONE GEICO, ACTUALLY UNDERTOOK

The Complaint is a textbook example of a "shotgun pleading," as it fails to give GEICO "fair notice of what the claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plaintiff's combining its class action against GEICO with six other class actions against six other Defendants only makes the inadequate pleading less adequate under *Twombly* and its progeny. This Court has condemned "shotgun pleading," where:

> each count incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading. Such pleadings make it virtually impossible to know which allegations of fact are intended to support which claims for relief.

*CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011); *Chriswell v. Vill. of Oak Lawn*, 11 C 00547, 2013 WL 5903417, *5 (N.D. Ill. Nov. 4, 2013).

Plaintiff's 158-page, 457-paragraph Complaint inundates GEICO with excessive "factual allegations," incorporating by reference all of the more than 350 paragraphs which precede each

---

[3] *Vacated and on other grounds Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011).

3

19492024

count against GEICO. *Twombly* and Fed. R. Civ. P. 8(a) place the burden on the plaintiff to provide a plain statement showing that it is entitled to relief—not upon a defendant or a court to untangle a morass of irrelevant, inapplicable, repetitive allegations in order to determine the basis of the plaintiff's claim. Long-windedness is not a substitute for proper pleading.

### III. PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO MEET THE REQUIREMENTS OF *TWOMBLY* TO STATE A PROPER CLAIM

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level" and give rise to a plausible claim. *Id.* at 547, 555. A RICO complaint needs "a fuller set of factual allegations" and "must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008). "Rule 9(b) … requires RICO plaintiffs … to plead all averments of fraud with particularity." *McDonald v. Schencker*, 18 F.3d 491, 495 (7th Cir. 1994).

### A. Plaintiff's RICO Claim (Count III) Fails to State a Claim for at Least Six Reasons

The elements of a RICO claim under 18 U.S.C. § 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1002 (7th Cir. 2004). Plaintiff must also show the RICO violation was the proximate cause of its damages. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).

#### 1. *Plaintiff Does Not Properly Identify a RICO Enterprise*

Before a RICO claim can properly be pled, the "plaintiff must identify the enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439 (7th Cir. 1990). To allege an association in fact enterprise, Plaintiff must plead facts plausibly tending to prove "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *See Limestone Dev. Corp.*, 520 F.3d at 805. Plaintiff must allege "a system of governance, an administrative hierarchy, a joint planning committee, a board,

4

a manager, a staff, headquarters, personnel having differentiated functions, a budget, records, or [similar] indicator." *Id.* at 804. The enterprise must be "distinct, separate, and apart" from the alleged racketeering activity and "from the units that go to make it up." *See Jennings*, 910 F.2d at 1439; *Williams v. Ford Motor Co.*, 11 F. Supp. 2d 983, 986 (N.D. Ill. 1998).

a.   *The Alleged "Enterprise" Does Not Include Allegations of an Ascertainable Organizational Structure*

To properly plead an enterprise, a plaintiff must allege facts showing:  (1) an organizational structure that is amenable to unified decision making; (2) how predicate acts are carried out; and (3) that the individual actors worked to advance the enterprise, not their own business. *See Limestone Dev. Corp.*, 520 F.3d at 804; *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013); *Cement-Lock v. Gas Tech. Inst.*, 05C0018, 2007 WL 4246888, at *17 (N.D. Ill. Nov. 29, 2007) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)).  Here, Plaintiffs have not met any of these criteria, and their claims fail.

Plaintiff alleges the enterprise members are "separate corporate entities," Compl. ¶¶ 177, 183-184, who are "economic partners," Compl. ¶ 109, and "work in tandem." Compl. ¶ 115; *see also* Compl. ¶¶ 192-197, 53-55.  There are no factual allegations that the purported GEICO enterprise has "a system of governance, an administrative hierarchy, a joint planning committee, a board, a manager, a staff, headquarters, personnel having differentiated functions, a budget, [or] records." *See Limestone Dev. Corp.*, 520 F.3d at 804 (the enterprise has "an ascertainable structure").  Plaintiff's "formulaic recitation" of elements is insufficient here. *See* Compl. ¶ 177.

Similarly, Plaintiff fails to explain how the alleged predicate acts were carried out under an organizational structure.  Yet, "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates … would not be enough to show that the individuals were members of an enterprise." *Boyle v. United States*, 556 U.S. 938, 947 (2009).  Indeed, Plaintiff alleges that the predicate acts—GEICO prepared estimates and represented to Plaintiff that GEICO's rates were prevailing—were carried out separately by

5

GEICO in the course of GEICO's business.  *See* Compl. ¶¶ 268-271.  There is no allegation that the enterprise carried out these acts.  *Id.*

Additionally, for an association to be considered a RICO enterprise, its members must have acted "on behalf of the enterprise as opposed to … in their individual capacities, to advance their individual self-interests."  *Walgreen Co.*, 719 F.3d at 854-55.  The members "must have conducted the affairs of the enterprise itself rather than merely acting to benefit themselves."  *Cement-Lock*, 2007 WL 4246888, at *17 (citing *King*, 533 U.S. at 163).  Here, as in *Walgreen Co.*, there are no allegations "that profits from the … scheme were siphoned off to the … enterprise," nor "that officials from either company involved themselves in the affairs of the other."  719 F.3d at 854.

If Plaintiff's allegations are sufficient here, then any two companies doing business in a common industry segment—including a law firm and a software vendor or a court and an e-filing vendor—would be a RICO enterprise.  Courts, including this one, have uniformly rejected this industry-segment-as-enterprise theory, holding "ordinary business dealings with past and present manufacturers, suppliers, or members constitute a structure."  *See Stachon v. United Consumers Club, Inc.*, No. 98 C 7020, 1999 WL 971284, at *3 (N.D. Ill. Oct. 21, 1999), *aff'd*, 229 F.3d 673 (7th Cir. 2000).  As here, "nothing within these ordinary business relationships mirror[ed] a hierarchical organization, nor d[id] these relationships foster consensual decision making in pursuit of the enterprise's alleged purpose."  *Id.* at *4; *see also Blue Cross & Blue Shield of Ala. v. Caremark, Inc.*, No. 98 C 1285, 1999 WL 966434, at *8 (N.D. Ill. Sept. 30, 1999).

        b.     *The Alleged Pattern of Racketeering Is Nothing More than a Statement of Predicate Acts that Does Not Support a RICO Claim*

An enterprise must be "distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not by what it does."  *Jennings*, 910 F.2d at 1440.  "If an association in fact could exist

6

solely for the purpose of committing predicate acts, any two persons committing predicate acts would be an association in fact and the enterprise requirement would be meaningless." *Immediate Merch. Servs., Inc. v. Bankcard Am., Inc.*, No. 94 C 557, 1994 WL 643272, at \*4 (N.D. Ill. 1994)).

Here, the alleged enterprise exists for the purpose of committing predicate acts, nothing else. Plaintiff describes the enterprise as follows: "GEICO establishes and maintains artificial prevailing rates for repairs" and "represents that deviations in hourly rates … do not constitute the prevailing rates." Compl. ¶¶ 192-197. "[T]he pattern of the racketeering activity" is identical: "fraudulently establishing and misrepresenting the prevailing rate for collision repairs to vehicles covered by insurance." Compl. ¶¶ 178, 236, 182. The enterprise is not alleged to carry on any <u>other</u> activities. *See id.* And while Plaintiff alleges that "<u>each member</u> … engages in operations that are distinct from their activities on behalf of the RICO Enterprise[]," Compl. ¶ 184 (emphasis added), Plaintiff does not allege that anyone is using the enterprise for anything other than as a conduit to perpetrate the alleged racketeering. As a matter of law, a RICO enterprise cannot be found on such allegations. *See Jay E. Hayden Found. v. First Neighbor Bank, NA.*, 610 F.3d 382, 389 (7th Cir. 2010).

c. *There Is No Allegation of a Common Purpose*

To state a claim, Plaintiff also has to allege a common unlawful purpose as an "essential ingredient" of an enterprise. *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004). "[T]he shared goal of financial profit, by each party conducting its own business, does not qualify as a 'common purpose' under RICO." *D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, 10 C 8159, 2013 WL 1286696, at \*9 (N.D. Ill. Mar. 28, 2013). As the *Stachon* Court said:

> [D]iverse parties, such as [alleged enterprise members], customarily act for their own gain or benefit in commercial relationships. Given the commercial nature of the various parties' relationships and the independent interests necessarily governing those relationships, [plaintiff] fails to dispel the notion that the different parties entered into agreements ... for their own gain or benefit.

*Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677,n.4 (7th Cir. 2000).

19492024

According to Plaintiff, GEICO and CCC are "economic partners." Compl. ¶ 109. CCC sells various software products, Compl. ¶¶ 46, 48, 193-196, and GEICO purchases them, resulting in a profit to CCC and benefit to GEICO. Compl. ¶¶ 53, 193-196. Insurers, like GEICO, "pay millions of dollars per year" for estimating software and "sign long-term contracts … locking in … annual revenue for [CCC]." Compl. ¶¶ 53-55. GEICO and CCC are in a vendee-vendor relationship, doing business for their individual economic benefit, not for the benefit of an enterprise. A common unlawful purpose cannot be found on such allegations. *See Stachon*, 1999 WL 971284, at *3 (Defendant's "contracting with members and suppliers" is not an enterprise because each "[d]efendant, manufacturer, supplier, and member enters into agreements for their own benefit."); *Cement-Lock*, 2007 WL 4246888, at *17 ("for an association to be considered a RICO enterprise, the individuals must have conducted the affairs of the enterprise itself rather than merely acting to benefit themselves"). The alleged actions of CCC and GEICO do not "serve[] any purpose other than their individual gain." *Okaya (U.S.A.), Inc. v. Denne Indus., Inc.*, 00C1203, 2000 WL 1727785, at *3 (N.D. Ill. Nov. 21, 2000).

The facts here are almost the same as those in *D.M. Robinson Chiropractic*, *supra*, where medical providers alleged that an auto insurer, Allstate, was engaged in an association-in-fact enterprise with a vendor who provided data about the reasonableness of charges for procedures. The alleged 'common purpose' was "reducing the price paid for medical reimbursements, and increasing the profits of the enterprise participants." *Id.* at *9 (internal brackets omitted). This Court dismissed the complaint because the alleged RICO enterprise was merely "a typical vendor-vendee relationship," and "the shared goal of financial profit, by each party conducting its own business, does not qualify as a 'common purpose' under RICO."[4] *Id.* at *11, *9. Here, Plaintiff alleges GEICO purchases and utilizes software and information provided by CCC regarding "prevailing rate" for certain automobile repair procedures. Compl. ¶¶ 57-58. Plaintiff

---

[4] This Court also observed that updating the software sold to Allstate, suppressing errors in that software, and alleged efforts to "slant" reimbursement outcome recommendations in Allstate's favor "do not go beyond efforts to tailor the program for the customer – activity that is common in a customer-supplier relationship." *Id.* at *11. *Compare with* Compl. ¶¶ 55-56.

alleges GEICO uses the software and information provided by CCC to establish an artificial prevailing rate to control and suppress repair costs. Compl. ¶ 58. This allegation, which is the heart of the Complaint, is directly analogous to the allegations in *D.M. Robinson Chiropractic*, where no 'common purpose' existed. *See id.* at *9.[5]

"[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise'*s affairs,' not just their *own* affairs." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 647 (7th Cir. 1995) (quoting *Reves v. Ernst & Young*, 507 U.S. 170 (1993)). Plaintiff must allege facts that plausibly prove that GEICO "did, in fact, use racketeering acts to participate in conducting the affairs of the enterprise, and that these acts were not simply committed in the conduct of its own business." *Williams*, 11 F. Supp. 2d at 988. An "arms-length business relationship between distinct entities," GEICO and CCC, "is not sufficient to show operation or management of an enterprise." *Crichton v. Golden Rule Ins. Co.*, 06-264, 2006 WL 2349961, at *7 (S.D. Ill. Aug. 11, 2006), *aff'd*, 576 F.3d 392 (7th Cir. 2009).

### 2. Plaintiff Has Not Alleged GEICO and CCC Were Involved in an Enterprise

Liability is limited to persons who "participated in the operation or the management of the enterprise itself, and … asserted some control over the enterprise." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001). A plaintiff fails to allege a defendant "participate[d], directly or indirectly, in the conduct" of the enterprise's affairs merely by asserting that the defendant "participated in the affairs" of the enterprise. *Id.* at 179. Rather, the plaintiff must allege that the defendant had some part in directing the affairs of the enterprise. *Id.*

---

[5] Similarly, the alleged vendor-vendee relationship demonstrates Plaintiff's common purpose allegations also fail for lack of mutuality. An indicator of "common purpose" is a scheme involving a pattern of racketeering which provides mutual economic benefits for all enterprise members. *See Walgreen Co.*, 719 F.3d *supra* at 5; *Walther v. Patel*, 10-706, 2011 WL 382752, at *5 (E.D. Pa. Feb. 4, 2011) (in-office credit scheme to promote impulse buying of dental procedures provided mutual economic gain to dental office and bank); *Browning v. Flexsteel Indus.*, 955 F. Supp. 2d 900, 911 (N.D. Ind. June 25, 2013) (defendants "did not merely have similar interests (robbing banks) but a truly common purpose of coordinating efforts to commit crime (and share proceeds)"). Here, Plaintiff does not, and cannot, allege any scheme providing mutual economic gain. On the contrary, Plaintiff alleges that CCC makes profit only by selling products and services to insurers. Compl. ¶ 53. Plaintiff thus concedes the absence of the possibility for mutual economic gain by the enterprise.

9

Plaintiff has not alleged how GEICO participated in the operation or management of the enterprise, or asserted control of it. *See Reves*, 507 U.S. at 178. The allegation that "Defendant Insurers conducted the respective enterprises through a pattern of racketeering activity," Compl. ¶¶ 178, 230, does not help Plaintiff's cause, because "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. Plaintiff's remaining allegations merely describe the allegedly nefarious activities, and are exactly the type the Supreme Court held insufficient to plead the "element of direction." *Reves*, 507 U.S. at 178.

Furthermore, Plaintiff has failed to allege any facts that tend to prove that CCC—the only other alleged participant in the purported GEICO enterprise—has engaged in any racketeering activity at all. Compl. ¶¶ 192-197. Plaintiff only alleges CCC is in vendor-vendee relationship with GEICO, and not in the management or operation a RICO enterprise.

This principle is demonstrated in the Seventh Circuit's decision *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392 (7th Cir. 2009), where the plaintiff purchased an insurance policy issued by Golden Rule Insurance and marketed by the Federation of American Consumers and Travelers. The alleged fraud-based predicate acts were premised on Golden Rule's use of a low introductory rate for its insurance policy, which was increased after the initial policy term. Golden Rule and the Federation were the only participants in the alleged association-in-fact RICO enterprise. Golden Rule had an active involvement in the Federation and its marketing schemes, including drafting bylaws, setting dues, and controlling the marketing material the Federation would distribute concerning Golden Rule's insurance products. *Id.* at 399.

Despite Golden Rule's extensive involvement in the affairs of the alleged association-in-fact enterprise, the Seventh Circuit held that "[t]hese allegations taken individually, or together, are insufficient to state a claim that Golden Rule controlled the operation or management of [the alleged association-in-fact enterprise]," and "[t]he statute [RICO] does not penalize tangential involvement in an enterprise…" *Id.* The court concluded that the plaintiff's claim "'begins and ends' with the fraud allegedly committed by Golden Rule. ... This is insufficient to state a RICO claim based on an association-in-fact enterprise." *Id.* at 400. This shows that for an association-

10

in-fact enterprise to exist, there must be more than one entity engaged in the predicate acts allegedly undertaken. Plaintiff has not met this burden as to either GEICO or CCC.

    3.    **Plaintiff Fails to Allege GEICO Was Involved in a Pattern of Racketeering Activity**

Plaintiff alleges GEICO has "engaged in thousands, if not millions, of acts in furtherance of their fraudulent scheme." Compl. ¶ 242. But "the raw number of predicate acts has never been determinative, especially when only mail and wire fraud are alleged." *Ashland Oil Co., Inc. v. Arnett*, 875 F.2d 1271, 1278 (7th Cir. 1989). Instead, the Seventh Circuit looks to the context of the racketeering when instances of wire fraud are the alleged RICO predicate acts. *See Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986).

Plaintiff has alleged only one scheme (suppression of compensation to shops), one repeated act (transmission of repair estimates), and one type of harm (purported payment to Plaintiff of less than Plaintiff believes it is entitled). Compl. ¶¶ 1-2, 240, 268-269. RICO was enacted to eradicate organized, long-term *criminal* activity, not to give federal standing to state common law claims which "the state courts … have ample tools to correct." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). The uniformity of the alleged scheme, predicate acts, and harm demonstrates that Plaintiff's claims do not sound in RICO. Moreover, because Plaintiff accepted the repair jobs *after* receiving the repair estimates, and thus, proceeded with the repairs knowing how much it would be paid, Plaintiff alleges conduct that does not plausibly state a fraud claim. *See* Compl. ¶¶ 5, 11, 46, 268-269; *Twombly*, 550 U.S. at 547.

    4.    **Plaintiff Fails to Allege Proximate Causation, Rendering Its RICO Claims Deficient**

A RICO "plaintiff is required to show that a RICO predicate offense not only was a "but-for" cause of his injury, but was the proximate cause as well. . . . Proximate cause for RICO purposes . . . requires some direct relation between the injury asserted and the injurious conduct

alleged." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010).[6]  While first-party reliance is not required, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), reliance by <u>someone</u> is required to establish causation, and "reliance may be a 'milepost on the road to causation.'" *Paulos v. Caesars World, Inc.*, 379 F.3d 654, 664–65 (9th Cir. 2004).  A complete lack of reliance by anyone precludes causation as a matter of law.  *Bridge*, 553 U.S. at 657.

The majority of Plaintiff's allegations of causation and reliance are legal conclusions directed at lumped-together "Defendant Insurers."  *See* Compl. ¶¶ 171-173.  These formulaic recitations of elements "will not do."  *Twombly*, 550 U.S. at 545.  Plaintiff's "treat[ment of] all the defendants as one" by "lumping [them] together" is likewise "clearly insufficient to state a RICO claim."  *Goren v. New Vision Int'l, Inc.,* 156 F .3d 721, 730 (7th Cir. 1998); Rule 8(a).

In any event, Plaintiff admits it was aware of the falsity of the alleged misrepresentations in its Complaint, and therefore cannot have relied on those "misrepresentations" here.  Plaintiff alleges it faced a "Hobson's choice:  Sell [its] repair services into a rigged market at suppressed rates or do not sell at all – and go out of business."  Compl. ¶ 11.  Had it refused to accept the "prevailing rate," Plaintiff may have lost business to lower cost shops.  Compl. ¶ 5.[7]  In other words, Plaintiff also knew the alleged falsity of the representations as to the prevailing rates.  *See* Compl. ¶¶ 5, 11, 268, 269.  Plaintiffs chose to proceed after receiving GEICO's estimates.  *See* Compl. ¶¶ 46, 268-269.[8]  Knowledge of falsity precludes causation.  *Bridge*, 553 U.S. at 657 (knowledge "would constitute an intervening cause breaking the chain of causation"); *see also*

---

[6] Plaintiff alleges that it suffered an injury, idiosyncratic to Plaintiff.  *See* Compl. ¶ 170; *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 13-317, -- S.Ct. -- (June 23, 2014) at § III.B (discussing, in a different context, how injury requirement at class certification poses proof issues).

[7] Under *Twombly*, this allegation nothing other than the innocent and procompetitive conduct of a buyer of services procuring services from a less expensive provider.  550 U.S. at 547.

[8] Plaintiff also knew, or had reasonable means of learning, how much other repair shops charge.  Just as the insurance companies are alleged to confer to discuss the rates and costs, so do the repair shops.  *See, e.g.*,  http://www.southernautomotiverepairconference.com/;  http://mscra.net/event/automotive-repair-industry-conference/.  Some of these conferences are sponsored by the Information Providers—who are allegedly in cahoots with the insurers.  *See, e.g.*, http://www.southernautomotiverepairconference.com/sponsors/ (listing CCC and Mitchell as sponsors). That the repair shops discuss at those conferences their costs, the insurers' compensation, and the estimating software is common sense.

19492024

*Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 849 (N.D. Ill. 2013) ("[w]hen mail fraud forms the basis for a RICO claim, the claim fails unless the plaintiff establishes that 'a person of ordinary prudence and comprehension would rely on the misrepresentations.'") (citations omitted). Plaintiff did not have relied on the truth of the alleged representations, and thus cannot show proximate causation.

> 5. **Plaintiff Has Not Alleged GEICO Participated in Any Racketeering Activity in Its Complaint**

As to racketeering, Plaintiff alleges "indictable violations of 18 U.S.C. 1343 (wire fraud)." Compl. ¶ 236. None exist. "To state a claim for wire fraud … plaintiff must show: '(1) that [defendant] engaged in a scheme to defraud, (2) with the intent to defraud, and (3) … used the mails or interstate wires in furtherance of that scheme." *Am. Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999). The required intent is criminal fraudulent intent. *See Corley*, 388 F.3d at 1005. "[M]ateriality is [also] an element of RICO mail fraud." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 693 F. Supp. 666, 673 (N.D. Ill. 1988).

> a. *Plaintiff Did Not Allege a Wire Fraud Claim with Sufficient Particularity Under Federal Law*[9]

"[T]o satisfy [Rule 9(b)], a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney*, 244 F.3d at 599. The method of transmission is required, because "wire transmission … must travel over interstate wires." *Barsky v. Metro Kitchen & Bath, Inc.*, 587 F. Supp. 2d 976, 989 (N.D. Ill. 2008). "[B]ecause a RICO plaintiff must allege two predicate acts of fraud, she must satisfy the requirements of Rule 9(b) twice." *Slaney*, 244 F.3d at 599 (citation omitted).

Plaintiff's repeated references to GEICO's alleged "fraudulent" conduct are conclusory at best. *See* Compl. ¶¶ 2, 8, 172-173, 178-179, 239, 242, 244, 246, 316-317, 319-320, 354, 359, 362-364, 366-367, 372, 450. Plaintiff's allegation that "Defendants Insurers … transmitted

---

[9] For the same reasons, Plaintiff's fraud theory to toll the statute of limitations fails under Rule 9(b).

and/or received and/or created by, or as a result of, wire" various "documents," Compl. ¶ 240, do not come close to satisfying Rule 9(b). Such "'loose references to [transmissions] in furtherance of a purported scheme to defraud … will not do." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). "[T]reat[ing] all the defendants as one" by "lumping [them] together" is also "clearly insufficient to state a RICO claim." *Goren*, 156 F.3d at 730.

Plaintiff appears to concede the lack of specificity, by articulating an excuse for its insufficient pleading. In Paragraph 242 of the Complaint, Plaintiff excuses the lack of specificity with respect to the details of the illegal wires because Plaintiff presumes that the necessary records are solely in the possession of GEICO. On the face of the Complaint, however, Plaintiff's presumption is without basis. Plaintiff alleges the estimates were the wires. *See* Compl. ¶ 240. It then alleges that GEICO communicated the estimates to it. Compl. ¶¶ 268-269. As a result, Plaintiff has adequate access to the information necessary to meet its Rule 9(b) burden with respect to the wiring requirement.

### b. *Plaintiff Has Not Alleged Criminal Intent*

Wire fraud requires Plaintiff to allege facts that plausibly show the defendant acted with "the intent to defraud." *Corley*, 388 F.3d at 1005 ("Intent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat."). "[R]acketeering activity is defined to mean various *criminal* acts, requiring *mens rea.*" *In re Integrated Res.*, 850 F. Supp. at 1145 n.56. "Because only criminal violations suffice as predicate acts under RICO, the alleged predicate act must be committed by the defendant with actual knowledge of the illegal activities." *Id.* Plaintiff's conclusory allegations of "intent" directed at "Defendant Insurers" do not pass *Twombly*. *See* Compl. ¶¶ 239-244. "[L]umping" defendants "together," particularly when alleging criminal mens rea, is likewise "clearly insufficient." *See Goren*, 156 F .3d at 730.

Plaintiff's remaining allegations against GEICO are a far cry from a "willful act" "with the specific intent to deceive." *Corley*, 388 F.3d at 1005. Plaintiff alleges GEICO "represented … that Plaintiff's charges were not in accordance with the prevailing rates," Compl. ¶ 271, and "systematic[ally] adhere[s] to its estimating profile and company estimating protocol

14

and guidelines, and prevailing rates." Compl. ¶ 273. These allegations are plausibly consistent GEICO's efforts to—(1) deliver cost-effective premium rates to its policyholders; (2) maintain its share in a competitive market; and (3) carry out its policy of paying all shops the same rate for quality repairs—but not to support a criminal allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("court [must] draw on its experience and common sense"); *Twombly*, 550 U.S. at 547 (2007) (Where the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Plaintiff admits the insurers "control … cost," Compl. ¶ 45, and the automobile insurance market is competitive. *See* Compl. ¶¶ 34-35. In any event, at most, Plaintiff alleges an unbalanced economic relationship. But "[n]ot all conduct that strikes a court as sharp dealing … is a 'scheme to defraud.'" *Corley*, 388 F.3d at 1008.

The Seventh Circuit has confirmed that the insurers' decision not to pay "a price higher than what they regard as the competitive rate" is perfectly legitimate. *Quality Auto Body, Inc.*, 660 F.2d at 1203. Such practice does not "impose any restriction on the repair shops beyond the immediate sales transaction." *Id.* The insurers are "taking steps to insure the best terms available in the marketplace and firmly indicating their position on price to … the body shops. …. '[T]his pressure encourages [the shops] to keep their costs down; and, for its own competitive advantage, (enables the insurer to pass) ... along the savings thus realized to consumers.'" *Id.* "[T]his process is in the consumer's best interest." *Id.*

Finally, Plaintiff alleges that the allegedly rigged estimating methods have been disclosed. Numerous repair shops are alleged to use "the Defendant Insurer's … customized 'estimating profile' and "protocols" which "outline limits for the time, scope and cost of compensable repairs." Compl. ¶¶ 42, 44. Because GEICO is alleged to have disclosed the "rigged" estimating methods, intent to deceive cannot be found.

> c. *The Alleged Representation Was, Based on Its Conduct, Not Material to Plaintiff*

"As with common law fraud, materiality is an element of RICO [wire] fraud. ... A fact is material if, knowing the truth, the plaintiff would have acted differently." *Mid-State Fertilizer*

15

*Co.*, 693 F. Supp. at 673. In *Mid-State Fertilizer Co.*, defendant bank "promised to immediately credit the loan with [plaintiffs'] deposits …, but …it did not always do so." *Id.* Because "plaintiffs knew of the failure to immediately credit the loan shortly after such action began," "any misrepresentation that may have been made was not material." *Id.* at 673-74. Here, too, Plaintiff alleges it knew its rates exceeded GEICO's estimates, and yet, proceeded with the repairs. *See* Compl. ¶¶ 5, 11, 268-270. "[A]ny misrepresentation that may have been made was [therefore] not material." *Mid-State Fertilizer Co.*, 693 F. Supp. at 673-74.

6. **Plaintiff's RICO Conspiracy Claim Fails**

Plaintiff's claim for conspiracy under § 1962(d) fails, because its § 1962(c) claim fails. *D.M. Robinson Chiropractic, S.C.*, 2013 WL 1286696, at *12. Plaintiff has not stated a conspiracy claim because it has not pled facts showing that GEICO "knowingly agree[d] to perform services of a kind which facilitate the activities of those who are operating the enterprise in an illegal manner." *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000). Plaintiff's "[c]onclusory allegations," *see* Compl. ¶¶ 371-374, "are not sufficient to state a claim under § 1962(d)." *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000).

B. <u>**Common Law Fraud (Count VIII) Fails**</u>

To plead a fraud claim, "[i]n Illinois, as elsewhere,"[10] Plaintiff must allege facts supporting: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (citation omitted); *see also Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (same elements).

Because Plaintiff "possesse[d] information sufficient to call the representation into

---

[10] Though Plaintiff is a Pennsylvania resident, the Court may apply Illinois law to its fraud and unjust enrichment claims, because the basic elements of these claims are universal. *See Chrichton*, 576 F.3d at 397 n.1 (applying Illinois law to Florida plaintiff's claim, because there was no conflict with Florida law).

question" and alleges it proceeded with the repairs knowing that its rates exceeded GEICO's estimates, *see* Compl. ¶¶ 5, 11, 46, 268-270, Plaintiff "cannot claim … he relied on or was deceived by the lie." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 676 (7th Cir. 1995). That is "because the false statement is not material under the circumstance" and "cannot play a causal role." *Id.*; *see also Gibbs*, 647 A.2d at 889 (justifiable reliance is an element of fraud). Regardless, GEICO's estimates are not actionable in fraud. *See, e.g., Emmerson v. Hutchinson*, 63 Ill. App. 203, 209 (App. 1896) ("expressions of opinion…cannot be made the basis of an action for deceit"). The word "estimate" shows that a statement is a nonactionable "opinion." *Sampen v. Dabrowski*, 222 Ill. App. 3d 918, 924 (1991).[11]

### C.  Plaintiff's Cannot State an Unjust Enrichment Claim Here

To state an unjust enrichment claim, Plaintiff must plead facts that plausibly tend to prove "'the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected.'" *Vill. of Oak Lawn v. Faber*, 378 Ill. App. 3d 458, 469 (2007) (quoting BLACK'S LAW DICTIONARY); *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 622 (Pa. Super. 1999) (similar). Plaintiff's claim for unjust enrichment fails for two reasons. First, Plaintiff claims that it agreed to repair the vehicle, and it was paid for that work, meaning it entered a contract to perform work knowing about the allegedly depressed rates. *See* Compl. ¶¶ 46, 268-269. There is no unjust enrichment in this circumstance. *See, e.g., La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977) ("A person is not entitled to compensation on the grounds of unjust enrichment if he receives from the other that which it was agreed between them the other should give in return").[12]

---

[11] In Count VIII (Fraud), Plaintiff also pleads fraudulent concealment and nondisclosure. Compl. ¶ 448. These claims fail, because Plaintiff has not alleged facts supporting "a special or fiduciary relationship" with GEICO. *See Magna Bank of Madison Cnty. v. Jameson*, 604 N.E.2d 541, 544 (1992); *N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1102 (Ill. App. 1995).

[12] It should be noted that the repair is service performed on the policyholder's automobile and the rights and duties at issue belong to the policyholder.

Second, since Plaintiff's unjust enrichment is predicated on the same allegations of fraudulent conduct that support its claim of fraud, its unjust enrichment claim is precluded. *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 852, 855 (7th Cir. 2007).[13]

## IV.  CONCLUSION

For all the foregoing reasons, the Court should dismiss the Complaint.

---

[13] In addition, Plaintiff has failed to allege that it conferred a benefit on GEICO, which is an element of the unjust enrichment claim in both Illinois and Pennsylvania. *See* Compl. ¶¶ 455-456.  By repairing the policyholder's automobile for the estimated amount, it is the policyholder that receives the benefit.

19492024

DATED this 27th day of June, 2014.

Respectfully submitted,

By: ___s/*Dan W. Goldfine*_____
    Dan W. Goldfine, Esq. (*pro hac pending*)
    Jamie L. Halavais, Esq. (*pro hac pending*)
    SNELL & WILMER L.L.P.
    One Arizona Center
    400 East Van Buren Street, Suite 1900
    Phoenix, AZ 85004-2202
    Telephone:   (602) 382-6000
    Facsimile:    (602) 382-6070
    Email:        dgoldfine@swlaw.com
                       jhalavais@swlaw.com

    John T. Williams, Esq.
    Jason H. Nash, Esq.
    HINKHOUSE WILLIAMS WALSH LLP
    180 North Stetson Ave., Suite 3400
    Chicago, Illinois 60601
    Telephone: (312) 784-5400
    Facsimile: (312) 784-5499
    Email:        jwilliams@hww-law.com
                       jnash@hww-law.com

    *Attorneys for GEICO*

19

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

———————————————————————
CRAWFORD'S AUTO CENTER, INC., on
behalf of itself and all others similarly situated,

    Plaintiff,

v.

STATE FARM AUTOMOBILE INSURANCE
COMPANY, *et al.*,

    Defendants.
———————————————————————

  Case No.:   1:14-cv-03146

  Honorable Robert M. Dow, Jr.

## CERTIFICATE OF SERVICE

  I, Jason H. Nash, an attorney, hereby certify that I have caused a copy of the foregoing Memorandum of Law Supporting GEICO's Motion to Dismiss to be served upon all persons and entities registered and authorized to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on June 27, 2014.

Dated: June 27, 2014       s/*Jason H. Nash*    

             ***One of the Attorneys for GEICO***

20

19492024